UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KENDRICK DANE SELLERS,

Plaintiff,

v. Case No. 26-cv-1315-bhl

ANGELA THOMPSON,
DESTINY KREBS,
KIRA LABBY,
LAUREN ROTUNDI-DICKEY,
CINDY BARTER, and
DR. JUSTIN RIBAULT,

Defendants.

---

# SCREENING ORDER

---

Plaintiff Kendrick Sellers, who is currently serving a state prison sentence at the Kettle Moraine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Sellers' motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

## MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Sellers has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Sellers has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $44.64. Sellers' motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Sellers asserts that he has been diagnosed with Conn's syndrome (primary aldosteronism),[1] "which is a seriously complexed [sic] rare medical issue pertaining to the Endocrine System." Dkt. No. 1 at ¶10. From May 23 through October 23, 2023, Sellers was confined at Red Granite Correctional Institution. Sellers asserts that during that time, he repeatedly requested emergency medical assistance for stroke-like symptoms, severe chest pain, and heart issues. Sellers asserts

[1] According to the Johns Hopkins Medicine website, Conn's syndrome "is a disorder in which your adrenal glands make too much of a hormone called aldosterone." Aldosterone helps regulate blood pressure by balancing sodium and potassium levels. Excess aldosterone can lead to high blood pressure and sometimes low potassium levels. Symptoms can often be managed with medication and lifestyle modifications. *See* https://www.hopkinsmedicine.org/health/conditions-and-diseases/primary-aldosteronism (last visited Sept. 9, 2026).

that Defendants Kira Labby, Destiny Krebs, Angela Thompson, and Cindy Barter "intentionally disregarded [his] serious medical conditions." *Id.* at ¶13.

Specifically, according to Sellers, on June 28, 2023, he was rushed to the emergency room after being given three nitroglycerin. He asserts that Labby had ordered a "heart monitor" for the following week but then cancelled it because he told healthcare staff that he would complain to offsite providers about his treatment during his appointment. He also asserts that he "begged Labby and Thompson" to follow the recommendations of an endocrinologist, but they informed him they were not required to follow the recommendations of a specialist. Beyond this broad assertion, Sellers does not detail what the recommendations were, if alternative treatment was provided, or whether he suffered any harm from the decision to not follow the recommendations.

Sellers also asserts that Labby, Barter, Thompson, and Krebs cancelled "specialized appointments" on June 14 and in July 2023 "for no medical reason." Sellers does not detail what the appointments were for, who they were with, whether they were rescheduled, or whether he suffered any harm from not going to the appointments as originally scheduled. He further states that Thompson sent him late to an appointment with an endocrinologist on August 3, 2023. Sellers also notes that Labby, Barter, Thompson, and Krebs cancelled appointments "for heart monitor" on September 22, 2023.

According to Sellers, Defendant Lauren Rotundi-Dickey, a provider in the psychological services unit, ignored his and her staff members' complaints about the treatment Sellers was receiving from providers in the health services unit. He states that when he was placed on observation status for expressing suicidal thoughts, she directed that he be placed in a room with no cameras or emergency call buttons. Sellers does not state if he was regularly observed by officers while on observation status or whether any emergency occurred while he was on observation status.

Sellers next alleges that, on August 27, 2023, an officer escorted him to see Barter because he was complaining of chest pain and confusion. Sellers states that Barter became aggressive and refused to care for him. According to Sellers, the officer questioned Barter's approach. Sellers asserts that his vital signs warranted emergency care, but he does not state what happened after Barter refused to treat him. Sellers had a similar interaction with Krebs on October 3, 2023. Sellers asserts that in response to complaints of severe chest pain and confusion, Krebs took his vitals, accused Sellers of not being honest about his symptoms, and then denied Sellers care. Sellers

again does not explain what happened after Krebs' alleged denial. On October 23, 2023, Sellers was sent to the emergency room by ambulance. He was then transferred to a different institution where his provider "ordered a battery of tests and consults to Endocrinology, Cardiology, Rheumatology, and Nephrology." Finally, Sellers alleges that Dr. Ribault cancelled all of his specialist appointments for October 2023 through October 2024 after Sellers was transferred to his new institution.

Sellers asserts that on November 2, 2023, he was diagnosed with tricuspid valve damage due to Labby, Barter, Krebs, and Thompson's disregard of his medical condition. And that on December 23, 2025—more than two years after he was transferred to a different institution—he was diagnosed with coronary heart disease "due to the lack of care provided for his diagnosis . . . ." According to Sellers, he has suffered heart rhythm irregularities, valve damage, coronary artery damage, and serious pain due to Defendants' extreme delays and disregard for his care.

## THE COURT'S ANALYSIS

Sellers asserts that Defendants violated the Eighth Amendment because they provided inadequate medical care in response to his complaints about his serious medical condition. "[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

As noted above, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. Sellers' complaint includes many legal conclusions but few factual allegations from which the Court can reasonably infer that Defendants violated his rights in the way he asserts. As noted above, Sellers does not allege what *immediate* harm he suffered in response to the cancellation of his appointments and/or the refusals to provide treatment. Nevertheless, construing his allegations broadly in his favor, the Court will allow him to proceed with his Eighth Amendment denial of medical care claim. Sellers alleges that the cumulative

impact of delayed and/or denied treatment significantly weakened his overall health. To ultimately prevail on his claim, Sellers will be required to provide medical evidence supporting his conclusion that Defendants' actions impacted him as he alleges, but for now, his limited allegations about his interactions with Thompson, Krebs, Labby, and Barter are sufficient to state a claim under the Eighth Amendment.

Sellers may also proceed on a state law negligence claim against Thompson, Krebs, Labby, and Barter. He does not, however, state a conspiracy claim against them for acting "in concert to deny [him] adequate care." The complaint contains no allegations that these Defendants interacted with one another at all, let alone that they reached an agreement to deny Sellers care. *See Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011) (to state a conspiracy claim, a plaintiff must allege facts plausibly suggesting an agreement among the defendants to achieve a common purpose of violating his rights).

Sellers also does not state a claim against Rotundi-Dickey, a provider in the psychological services unit. Sellers alleges that she turned a blind eye to the complaints he and staff members made about the treatment he was receiving from providers in the health services unit, but "there is no general duty of rescue" under §1983. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Nothing in the complaint suggests that Rotundi-Dickey had supervisory authority over providers in a different unit. She was responsible for responding to prisoners' psychological needs, not their medical needs. Her "failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service." *Id.* Sellers' allegations that she placed him in an observation cell without an emergency call button or cameras also fail to state a claim. Most inmates on observation status are regularly observed by officers every fifteen minutes, if not continually, so an inmate in need can simply present his requests to an officer. Put plainly, Sellers does not allege that he suffered harm from being placed in a cell without a call button or cameras. *See Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011)) (to succeed in a § 1983 suit, a plaintiff must "establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages").

Finally, Sellers does not state a claim against Dr. Ribault based on allegations that he cancelled his appointments with specialists from October 2023 through October 2024. Sellers' allegations regarding the cancellation of these appointments are vague, but it appears that Dr. Ribault cancelled the appointments because Sellers was transferred to a different institution and

therefore Dr. Ribault was no longer Sellers' provider. In any event, according to Sellers, after he was transferred to a different institution, his new provider ordered numerous tests and scheduled appointments with various specialists. Sellers was therefore not harmed by the cancellation of the appointments because new appointments were scheduled. *See Roe*, 631 F.3d at 864.

**IT IS THEREFORE ORDERED** that Sellers' motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Sellers fails to state a claim against Lauren Rotundi-Dickey and Dr. Justin Ribault, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Sellers' complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Angela Thompson, Destiny Krebs, Kira Labby, and Cindy Barter.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Angela Thompson, Destiny Krebs, Kira Labby, and Cindy Barter shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Sellers is located.

**IT IS FURTHER ORDERED** that the agency having custody of Sellers shall collect from his institution trust account the $305.36 balance of the filing fee by collecting monthly payments from Sellers' prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Sellers is transferred to another institution, the transferring institution shall forward a copy of this Order along with Sellers' remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all

inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Sellers is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Sellers may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin this 15th day of September, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge